IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARRY JOE VANG

      Petitioner,                   Case No. 1:03-cv-05528 ALA (HC)

    vs.

D.L. RUNNELS

      Respondent.              **ORDER**

_____/

      Petitioner, a state prisoner proceeding *pro se*, timely filed a Notice of Appeal of this Court's, February 5, 2008, denial of his application for a writ of habeas corpus. (doc 22). Before Petitioner can appeal this decision, a Certificate of Appealability must issue. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

      A Certificate of Appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court must either issue a Certificate of Appealability indicating which issues satisfy the required showing or must state the reasons why a certificate should not issue. Fed. R. App. P. 22(b)(1).

/////

/////

For the reasons set forth in this Court's Order, dated February 5, 2008, (doc. 22), and reiterated in part below, Petitioner failed to make a substantial showing that his constitutional rights were infringe upon, warranting a Certificate of Appealability.

## I.  PETITIONER'S INSUFFICIENCY OF THE EVIDENCE CLAIM

The Petitioner claimed that there was insufficient evidence to support his attempted murder convictions on counts 2, 3, 5, and 8-11.  He maintained that the evidence did not demonstrate that he had the specific intent to kill May Moua (count 2), Kalia Her (count 3), Chang Her (count 4), Andy Her (count 5), Louise Fang (count 8), Yee Fang (count 9), Mee Fang (count 10), and Pang Fang (count 11), the individuals who were injured by bullets that hit other parts of the buildings due to the movement of the car.  Petition at 19.  He asserted that, at most, his actions demonstrated deliberate indifference, which falls short of the state of mind required to support an attempted murder conviction.  *Id.* at 20.

Sufficient evidence to support a conviction exists if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  To grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of this case.  *Id.* at 1275.

When the sufficiency of the evidence is challenged by a state prisoner in federal habeas corpus proceedings, a federal court must review the entire record.  *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987); *see also Jackson*, 443 U.S. at 318 (implying that in federal habeas
/////
/////

1  corpus proceedings, federal courts have a duty to review the underlying facts for an
2  insufficiency of the evidence claim as they do for claims relating to an alleged involuntary
3  confession). "The relevant inquiry is not whether the evidence excludes every hypothesis except
4  guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Dinkane*, 17
5  F.3d 1192, 1196 (9th Cir. 1994) (quoting *United States v. Mares*, 940 F.2d 455, 458 (9th Cir.
6  1991)). A federal court must determine the sufficiency of the evidence in reference to the
7  substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324
8  n.16; *Chein*, 373 F.3d at 983.

9  The instant record demonstrated that substantial evidence supported the California Court
10 of Appeal's conclusion that the Petitioner had the required state of mind to convict him of the
11 attempted murder counts. For example, Officer Fred W. Weiss testified on direct examination in
12 detail about the bullet holes and casings he found in virtually every room of an apartment at one
13 of the shootings. *See, e.g.,* RT at 1017-19 (describing the four to six bullet holes and strike
14 marks that were in a bathroom, closet, and bedroom that traversed through numerous walls); *id.*
15 at 1020-23 (describing in detail the twelve bullet holes and strike marks he observed in the front
16 window and the wall surrounding the window). Officer Douglas Ray Stokes testified that
17 several vehicles were hit by rounds of bullets and that numerous rounds were fired at the front of
18 the residence. *Id.* at 361. He stated that the rounds went through the living room into the kitchen
19 and that the patterns on the doors and walls indicated shotgun blasts. *Id.*; *see also id.* at 324-28
20 (identification technician Christina Stirling testified that the bullet damage continued to the rear
21 exterior of the apartment and that 13 bullet fragments, 20 shotgun pellets, and one fully intact
22 bullet were found at the location). After examining 39 cartridge cases discharged at the shooting
23 sites, one of the weapons used was identified as an AK-47 semi- or fully-automatic assault
24 weapon. *Id.* at 301.
25 /////
26 /////

1 There was also overwhelming evidence of the Petitioner's participation in the shooting, and evidence that the shooting was retaliatory and gang-related, a fact from which intent can reasonably be inferred.[1] For example, testimony offered by the state at trial showed that the Petitioner admitted his involvement in the shootings to another inmate while in custody. RT at 1073. The record showed that the Petitioner stated that he "shot at [the] wrong house" and that he "meant to shoot at guy named Za."[2] *Id.* The Petitioner's father testified regarding attacks on his family by rival gang members. He stated that someone entering his home and physically assaulted him and other family members the day before the two drive-by shootings occurred. *Id.* at 1100-02. This testimony demonstrated that the Petitioner had a motive to retaliate against the rival gang. This evidence supported the state's argument that the Petitioner was involved in the shootings. In addition, the record showed that the Petitioner had MOD tattoos and photographs flashing gang signs, which are indicative of his gang membership, and the Petitioner admitted to being a member of MOD. *See id.* 2137-39, 2195, 1108.

After independently reviewing the record, this Court concluded that the decision of the California Court of Appeal was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

/////

---

[1] "Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698. Circumstantial evidence that a drive-by shooting was gang-related and retaliatory in nature, that defendants cased the area of the rival gang before shooting, and fired a dozen shots was sufficient to infer the intent necessary to uphold the attempted murder convictions. *People v. Herrera*, 83 Cal. Rptr. 2d 307, 310-11 (Ct. App. 1999); *see also People v. Gutierrez,* 18 Cal. Rptr. 2d 371, 374-78 (Ct. App. 1993) (sustaining attempted murder conviction where defendant stalked victims believed to be rival gang members, shot at victims five times, then fled and discarded gun).

[2] Za is apparently a rival gang member.

4

## II. PETITIONER'S JURY INSTRUCTION CLAIM

The Petitioner contended that because the jury instruction on transferred intent was read too closely to the attempted murder conviction, the jury mistakenly applied a transferred intent theory in convicting him on the attempted murder counts. Petition at 20A. Petitioner argued that his Fifth and Fourteenth Amendment rights were violated because the trial court failed to present a clarifying instruction to the jury. *Id.*

To obtain habeas corpus relief for errors in the jury charge, a petitioner must show that an instruction so infected the entire trial that the resulting conviction violated due process. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* Furthermore, even if it is determined that the instruction violated the right to due process, a petitioner can only obtain relief if the instruction had a substantial influence on the conviction and resulted in actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Hanna v. Riveland*, 87 F.3d 1034, 1039 (9th Cir. 1996) ("On collateral review, *Brecht* requires a court to determine whether the constitutional error 'had substantial and injurious effect or influence in determining the jury's verdict.'") (citation omitted) (internal quotation marks omitted). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (footnote omitted).

The Petitioner failed to sustain his burden of proof on this claim. He did not show that the jury instruction on transferred intent "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

To the extent that the Petitioner's argument rested on an assumption that the jurors were

/////

/////

not likely to pay full attention to, or understand the limits on, the transferred intent instruction because of the placement of the instructions, this argument fails in light of the well-settled principle that jurors listen to and comply with the trial court's instructions. *See, e.g., Shannon v. United States*, 512 U.S. 573, 585 (1994) (stating that there is "'the almost invariable assumption of the law that jurors follow their instructions.'") (citation omitted) .

/////

### III. PETITIONER'S CLAIM REGARDING BIFURCATING THE TRIAL

The Petitioner argued that his due process rights were violated because the trial court improperly denied his motion to bifurcate the trial of the "criminal gang"[3] charge and gang enhancements from the remainder of the charges for the murder and attempted murder counts. Petition at 29-30.

A joinder of charges, or a failure to separate the guilt from the sentencing phase of a trial, violates due process only if the joinder was so prejudicial that the trial court should have ordered a separate trial. *Fuller v. Roe*, 182 F.3d 699, 703 (9th Cir. 1999), abrogated on other grounds in *Slack v. McDaniel*, 529 U.S. 473 (2000). The requisite level of prejudice is reached only "if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000) (citing *Bean v. Calderon*, 163 F.3d 1073, 1086 (9th Cir.1998)). The admission of evidence violates due process if there are no permissible inferences the jury may draw from the evidence. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

Here, evidence of gang membership was relevant to the Petitioner's motive to commit the crimes. The jury properly could have inferred from this evidence that the Petitioner participated in the drive-by shootings in order to benefit the gang. This was not a case where the "joinder of counts allow[ed] evidence . . . to be introduced in a trial where the evidence would otherwise be

---

[3] "Criminal gang" evidence is evidence that demonstrates that this group of individuals constitute a "criminal street gang" within the meaning of CAL. PENAL CODE § 186.22(f).

1 inadmissible." *Sandoval*, 241 F.3d at 772. The Petitioner did not show he was prejudiced by
2 the failure to bifurcate. The evidence of gang membership was highly probative at the guilt
3 phase of the trial. The Ninth Circuit has concluded that evidence of gang activity is admissible if
4 used to establish something other than the character of the defendant. *United States v. Hankey*,
5 203 F.3d 1160, 1172 (9th Cir. 2000); *see also United States v. Abel*, 469 U.S. 45, 54 (1984)
6 (holding that evidence of gang membership is admissible where it had probative value). Gang
7 enhancement allegations differ from certain other sentence enhancement allegations.

8       The Petitioner failed to demonstrate that the denial of his motion to bifurcate violated his
9 right to due process because he has not shown that there were impermissible inferences to be
10 drawn.
11 /////

## IV. PETITIONER'S PROSECUTORIAL MISCONDUCT CLAIM

13       The Petitioner asserted that prosecutorial misconduct at trial violated his right to due
14 process. Petition at 35-37. Habeas corpus relief will be granted on grounds of prosecutorial
15 misconduct only when it "so infected the trial with unfairness as to make the resulting conviction
16 a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 171 (1986) (quoting *Donnelly v.*
17 *DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Bonin v. Calderon*, 59 F.3d 815, 843 (9th
18 Cir. 1995) (holding that habeas corpus relief only can only be granted if the error "had
19 substantial and injurious effect or influence in determining the jury's verdict.") (quoting *Brecht*,
20 507 U.S. at 622). To constitute a due process violation, the prosecutorial misconduct must be
21 "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v.*
22 *Miller*, 483 U.S. 756, 765 (1987) (citations omitted). Under this standard, a petitioner must
23 show that there is a reasonable probability that the error complained of affected the outcome of
24 the trial - i.e., that absent the alleged impropriety, the verdict probably would have been
25 different. *Id.* at 765-66; *United States v. Weitzenhoff*, 35 F.3d 1275, 1291 (9th Cir. 1994).
26 /////

7

1  The standard of review is a "narrow one of due process, and not the broad exercise of
2  supervisory power." *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996) (citations omitted).
3  "Improper argument does not, per se, violate a defendant's constitutional rights." *Jeffries v.*
4  *Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993).

**A. CROSS-EXAMINATION OF CO-DEFENDANT**

The Petitioner alleged that during cross-examination by counsel for a co-defendant, Detective Gines testified that the three defendants were closest to being "shot-callers," or leaders in the MOD gang. Petition at 36. The Petitioner's motion to strike was denied. *Id.* The Petitioner argued that this testimony incorrectly allowed the jury to conclude that he was the perpetrator of the two drive-by shootings. *Id.* at 41.

The Petitioner failed to show that there was a reasonable probability that the failure to grant his motion to strike this testimony affected the outcome of the trial. The record showed that there was independent evidence of the Petitioner's membership in the gang. *See* RT at 1108 (the Petitioner's father identified the Petitioner's MOD gang tattoo); *Id.* at 2137-39 (photographs of the Petitioner flashing MOD gang signs and showing off his MOD tattoo); *Id.* at 2195 (the Petitioner previously admitted to being a member of MOD for approximately four years). Furthermore, because the challenged question was asked by counsel for a co-defendant, the Petitioner also failed to demonstrate that the prosecutor was responsible for the production of the challenged testimony.

**B. CROSS-EXAMINATION OF WITNESS BY CO-DEFENDANT**

During cross-examination by counsel for a co-defendant, Deputy Sheriff Connie Moore read part of her report which states that co-defendant Yang was a member of the MOD gang and that he admitted to previously assaulting a rival gang member. RT at 1209-10. The Petitioner claimed that this testimony contravened the trial court's decision to preclude any reference to

/////

/////

prior offenses committed by defendants and that it tended to show that it was more likely that the Petitioner retaliated by committing the charged offenses, which violated his due process rights. Petition at 35, 37.

From the record, it is clear that there is no connection between the prosecutor's direct examination of Deputy Sheriff Moore and the testimony elicited during a co-defendant's cross-examination of that officer. The Petitioner failed to demonstrate *prosecutorial* misconduct in this regard.

**C. HYPOTHETICAL POSED BY PROSECUTOR**

The Petitioner contended that a hypothetical posed by the prosecutor to gang expert Detective Lee was improper. Petition at 36. The prosecutor asked the following hypothetical question:

> Q  And --  if let's assume the following hypothetical. If you were aware that the three hypothetical people that I just referred to in those three separate hypotheticasl were -- if you assume, first of all, that two of them had been either themselves or their family members had been the victims of two shooting incidents and one robbery and assault within a week prior to a particular date, and you learned further that those three people, the two people who either themselves or their families had been victimized and a third person whom you believed to associate with M.O.D., and further add to the hypothetical that the two people who had been victimized or their families had stated they believed that O.R.B. was responsible for those assaults, and you learned then that those two people as well as another person, who was associated with M.O.D. then committed a drive-by on a house in which the people at that house were associated with O.R.B. in some fashion and their next-door neighbor up until several weeks before had been an O.R.B. gang member, that there was a shooting at that house and then ten minutes later there was another shooting at another house in which a resident of that house was either a member of or associated with O.R.B., would you have an opinion as to whether those two shooting incidents were in association with the M.O.D. gang.

RT at 2200-01. Detective Lee answered the hypothetical with a simple "Yes." *Id.* at 2201. The Petitioner argued that allowing this testimony violated the trial court's order that evidence of prior offenses would not be admissible. *Id.* at 41.

/////

9

/////

The Petitioner failed to demonstrate that this hypothetical question infected the trial process with unfairness and, that absent this hypothetical, the verdict would have been different. *See Darden*, 477 U.S. at 181 (holding habeas corpus relief will only be granted is the prosecutorial misconduct "so infected the trial with unfairness" as to make the verdict "a denial of due process").

/////

## V.  PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

The Petitioner stated that he "was not afforded [sic] the effective assistance of trial counsel . . . insofar that trial counsel failed to object to statements and testimony given by "Handy" or Yee Yang."  Petition at 43.

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of *Williams v. Taylor*, 529 U.S. 362  (2000).  *Weighall v. Middle*, 215 F.3d 1058, 1062 (9th Cir. 2000).  The Supreme Court enunciated the standards for judging ineffective assistance of counsel claims.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Id.* at 688.  To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *Id.* at 690.  The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  *Id.*

Second, a defendant must affirmatively prove prejudice.  *Id.* at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id.*; *see also United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985).

1  /////

2  /////

3  A court need not determine whether counsel's performance was deficient before
4  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.
5  *Strickland*, 466 U.S. 668, 697 (1984). Because the defendant must affirmatively prove prejudice,
6  any deficiency that does not result in prejudice must necessarily fail. However, there are certain
7  instances which are legally presumed to result in prejudice, e.g., where there has been an actual
8  or constructive denial of the assistance of counsel or where the State has interfered with
9  counsel's assistance. *See Strickland*, 466 U.S. at 692.

10  The Petitioner failed to demonstrate that, had trial counsel objected to this evidence, the
11  outcome of the trial would have been different.

12  /////

### VI.  PETITIONER'S "CUMULATIVE EFFECT" CLAIM

14  Finally, the Petitioner argued that the cumulative effect of the above errors deprived him
15  of his due process rights and, therefore, required a reversal of his conviction. Petition at 47. The
16  principle of cumulative error is applicable where, "although no single trial error examined in
17  isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors
18  may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996);
19  *see also Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) ("For even if no single error were
20  prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless
21  be so prejudicial as to require reversal.'") (citation omitted). However, where there is no error,
22  nothing can accumulate to the level of a constitutional violation. The Petitioner failed to
23  demonstrate any constitutional error.

24  /////

25  Accordingly, **IT IS HEREBY ORDERED** that a Certificate of Appealability should not
26  issue in this action.

1  DATED: April 16, 2008                    /s/ Arthur Alarcón
                                            UNITED STATES CIRCUIT JUDGE
2                                           Sitting by Designation